UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        PLAINTIFF,

CASE NO. _____

v.

$20,060.00 IN U.S. CURRENCY,

        DEFENDANT.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Gregory G. Brooker, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $20,060.00 in U.S. for violations of 21 U.S.C. § 841 *et seq.*

## THE DEFENDANT *IN REM*

2. The defendant *in rem* is $20,060.00 in U.S. Currency seized from Katrina Woods at the Minneapolis/St. Paul International Airport ("MSP") on July 28, 2017. The defendant *in rem* is in custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant $20,060.00 in U.S. Currency (the "Defendant Currency"). This Court has

jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant is located in this District.

**FACTS**

6. On July 28, 2017, special agents of the United States Drug Enforcement Administration ("DEA") and officers from the Minneapolis/Saint Paul Airport Police Department ("APD") Special Investigations Division received information from a Confidential Source ("CS"), regarding a suspicious travel itinerary for Katrina Woods a/k/a Katrina Kearney ("Woods").

7. Woods and her travel companion, Jeffrey Clevon Walker ("Walker") obtained one-way flight reservations on July 27, 2017 at 3:46 p.m. on Sun Country Airlines flight #SY423, which was scheduled to depart MSP on July 28, 2017 at 10:05 a.m. and arrive at the Los Angeles International Airport ("LAX") on July 28, 2017 at 12:00 p.m.

8. Purchasing airfare at the "last minute" is commonly associated with individuals involved in narcotics trafficking for two reasons. First, individuals purchasing

narcotics often do not know well in advance when they will have all of their currency collected to bring to the narcotic source. Second, individuals smuggling narcotics proceeds often make their travel reservations at the "last minute" in hopes of lessening the chances of law enforcement intervention.

9. One-way flights are also commonly associated with individuals trafficking narcotics and narcotic proceeds for two reasons. First, individuals often prefer to bring the newly acquired narcotics to the consumption area using a mode of transportation other than commercial air travel due to the stringent security checks involved in such travel. Often, such individuals take a rental vehicle, bus, or train for their return trip. In other cases, individuals ship the newly acquired narcotics back to themselves or their associates using a parcel service such as FedEx, UPS, or USPS.

10. APD Investigative Analyst ("IA") Eric Meyer performed open source queries on both Woods and Walker and learned that Woods had prior convictions for theft and credit card fraud. Walker had multiple drug-related arrests and felony convictions listed on his criminal history and had an active felony warrant for violating conditions of his parole.

11. On July 28, 2017 at approximately 9:00 a.m., APD Detective Frank Coburn and APD Sergeant John Christenson, dressed in plainclothes, observed Woods and Walker at the Sun Country Airlines ticketing counter in Terminal #2 at MSP.

12. As Woods and Walker left the Sun Country Airlines ticketing counter, Sergeant Christenson approached Woods and briefly showed her his police identification card. Sergeant Christenson asked Woods if she had a minute to talk and told her she was

not in any trouble. Woods agreed to speak with APD officers.

13. Sergeant Christenson explained to Woods that he is part of a plain clothes unit within the police department and that his job is to speak with passengers throughout the day to ensure that dangerous and/or illegal items are not being smuggled through the TSA security checkpoints.

14. Sergeant Christenson asked Woods if she had packed any items that would be considered prohibited such as razors, knives, ammunition, firearms, or explosives. Woods stated she did not have any prohibited items in her possession or packed in her luggage.

15. Woods further stated, "Y'all can check if you want, here," and pushed her luggage towards Detective Coburn.

16. Detective Coburn then asked Woods if it was okay to search her roller bag. Woods consented.

17. Detective Coburn located two stacks of U.S. currency held together by rubber bands and asked Woods how much money was in the stacks. Woods downplayed the presence of the large amount of cash stating that it was four or five thousand dollars per stack and that the money was for "body enhancement."

18. Sergeant Christenson asked Woods if she had any other large amounts of currency in her roller bag. Woods stated she did not and reiterated that she just had "five and five," which she planned to use for plastic surgery.

19. Detective Coburn continued searching Woods' roller bag and located a foreign object between the fabric liner of the bag and the outer shell. Detective Coburn

un-zipped the liner and discovered a third, similar, stack of U.S. currency between the liner of the bag and the outer shell.

20. Woods acknowledged that she had additional money in her roller bag and did not want the "baggage people" taking her money. Sergeant Christenson found this statement to be odd because the bag was a carry-on that would not be checked in with the airline baggage or handled by baggage personnel.

21. Sergeant Christenson asked Woods if the third stack was another five thousand, which Woods confirmed. Sergeant Christenson asked Woods if she had forgotten about the currency when she previously indicated she had ten thousand dollars total. Woods responded that it was her business and that she did not have to explain herself to officers.

22. Woods denied that the currency in her possession had recently been around any street narcotics.

23. Sergeant Christenson asked Woods if Detective Coburn and USPCA Certified narcotics canine Jackson could perform a sniff of the currency. Woods consented to a sniff of the currency but expressed concern about missing her flight.

24. Detective Coburn then placed the three stacks of currency at the base of a metal trash receptacle, in view of Woods, and took control of Jackson's extendable leash. Jackson pulled directly towards Woods' roller bag, sniffed it, and sat while looking up at Detective Coburn. This was Jackson's positive alert to the presence of controlled substances odors on Woods' roller bag.

25. At the direction of Detective Coburn, Jackson continued to sniff numerous

benign objects in the area such as doors, vending machines, and chairs before approaching Woods' three stacks of currency. As Jackson sniffed the three stacks of currency, he immediately sat down. Jackson alerted positive to the presence of controlled substances on Woods' three stacks of currency.

26. Sergeant Christenson asked Woods if she was sure the currency had not been around any narcotic odors recently. Woods then stated she smoked marijuana on the way to the airport and but that it was not a big deal.

27. Sergeant Christenson advised Woods that he had some additional questions about the currency and asked if she would be willing to speak further about the currency and her travels in the police office. Woods agreed.

28. Sergeant Christenson interviewed Woods in a conference room of the APD office. During the interview, Woods made the following assertions:

   a. Woods lives in Milwaukee, Wisconsin and rents her residence for $500.00 per month;

   b. Woods works at Legacy Assisted Living ("LAL") in Milwaukee, and her supervisor is "Ashley," but she did not know Ashley's phone number;

   c. Woods earns $2-3,000.00 per month at LAL and works about 40 hours per week at LAL as a caregiver;

   d. Woods dances at "Gold Diggers" strip club in Milwaukee and dances about 15 days per month at Gold Diggers;

   e. Woods also dances about 4-5 days per month at "Dolls at the Dells" in Wisconsin Dells;

   f. Woods gets $1,000.00 per month from the social security administration for one of her children, who is disabled;

   g. Woods owns a rental property at 3539 North 4th Street, Milwaukee, WI and

rents the house to K.W. for $1,150.00 per month;

h. Woods ran a child care facility from 2013 to 2016 located at 3539 North 2nd Street, Milwaukee Wisconsin named Woods Family Childcare, earning $3,000.00 per month at the childcare facility from the State of Wisconsin Department of Children and Families;

i. Woods had heard from friends that California is the best place to go for plastic surgery, the doctors in Milwaukee were limited and not up to her standards, but she had not identified a specific doctor in California yet to perform the work she was interested in; and

j. Woods planned to stay with an uncle in California, but had not contacted him to advise him of her trip.

29. Detective Coburn then entered the conference room with a cellphone case in his hand and asked Woods if she forgot something in the chairs in which she had previously been seated. Woods stated she did not think so.

30. Detective Coburn asked Woods if she forgot her cellphone case. Woods looked at the pink phone case and denied that it was hers. Detective Coburn stated the phone case contained a small baggie of what appeared to be marijuana. Detective Coburn said that the CCTV cameras would reveal the true owner of the phone case and associated evidence. Woods then stated, "It's just some damn crumbs of marijuana, just some crumbs!"

31. Detective Coburn issued Woods a citation for possession of a small amount of marijuana.

32. Officers found it unlikely that Woods would travel one-way on a whim to California with her boyfriend, who did not know her travel plans, for plastic surgery services from a doctor she had not yet identified. It also seemed unlikely that Woods would

be staying with a relative that she had not yet arranged anything with or that she would be able to schedule plastic surgery within a week of her arrival in California.

33. The officers explained to Woods that the currency was being seized as drug proceeds.

34. Woods' traveling companion Jeffery Walker ("Walker") was also interviewed by officers. Walker made the following assertions:

    a. Walker was traveling to California to hang out with his girlfriend, Woods, for a few days;

    b. Walker purchased his airline ticket a few days ago;

    c. Walker was going to stay with his cousin while in California;

    d. Walker was going to use the currency to buy nice clothes but did not know where;

    e. Walker stated he was employed by Engine Transmission Exchange;

    f. When asked if he was carrying any large amounts of currency, Walker replied "... [a]bout 15;" and

    g. Walker was carrying $14,400.00 in U.S. Currency.

35. Officer Askerooth learned that Walker had an active warrant out of Wisconsin for a parole violation and placed him under arrest.

36. K-9 Jackson performed a sniff of the currency in Walker's possession and positively alerted to the presence of controlled substance odor on the currency.

37. The $14,400.00 in U.S. Currency was seized. Walker was sent notice of that forfeiture proceeding, but he did not file a claim. On November 29, 2017, the currency seized from Walker was administratively forfeited by the DEA.

38. On September 27, 2017, Woods filed a claim for the Defendant Currency in the DEA's administrative proceeding.

39. Officers reviewed Woods' claim and investigated her assertions and learned the following:

   a. Woods stated the money came straight from the bank. In the claim she filed with DEA objecting to the administrative forfeiture, she provided 18 bank bands, which she asserted proved the currency came from the bank. Further investigation revealed:

      i. Per Tri-City National Bank's Fraud Department, Woods has not been a customer with the bank since 2013.

   b. Woods stated that she owed a daycare business, grossing around $100,000. Further investigation revealed:

      i. Per the Wisconsin Secretary of State, Woods did not own Woods Family Childcare LLC. The business is owned by Keena Woods-Smith, Woods' sister.

   c. Woods also stated that she had purchased a house with $40,000 in cash. Investigation revealed:

      i. Woods and Raymond Woods purchased a house in Wisconsin in 2015 for $3,675.00.

   d. Raymond Woods, Woods' husband, has multiple drug-related offenses.

**BASIS FOR FORFEITURE**

40. The allegations in the preceding paragraphs are re-alleged and incorporated by reference.

41. The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because the currency was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or

intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

42. The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant *in rem*, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant *in rem*, that the Defendant *in rem* be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated:  January 25, 2018

GREGORY G. BROOKER
United States Attorney

s/ Craig R. Baune
BY:  CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone:  612-664-5600
Craig.baune@usdoj.gov

## VERIFICATION

I, Jeffrey N. Trevino, verify and declare under penalty of perjury as follows:

I am a Police Detective with the Airport Police Department and am currently assigned to the U.S. Drug Enforcement Administration ("DEA") Task Force as a DEA Task Force Officer. I have been a police officer for the past 23 years and have extensive experience with narcotics interdiction. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a Drug Enforcement Administration Task Force Officer.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 24, 2018                s/ Jeffrey N. Trevino
                                        JEFFREY N. TREVINO
                                        U.S. Drug Enforcement Administration
                                        Task Force Officer